Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1083 | **DATE** | 9/20/2001 |
| **CASE TITLE** | RICHARD H. ALMQUIST, ET AL vs. LOCAL 17-U | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  **Motion (10-1) for summary judgment is granted.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 2 1 2001 date docketed | |
| ✓ | Docketing to mail notices. | | 17 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP 20 PM 4:36 | |
| DW | courtroom deputy's initials | | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION



RICHARD H. ALMQUIST and
MICHAEL A. SUROWIEC,

    Plaintiffs,

v.

LOCAL 17-U OF THE UNITED
STEELWORKERS OF AMERICA,

    Defendant.

No. 99 C 1083
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

Plaintiffs Richard Almquist and Michael Surowiec were members of Defendant Local Union 17-U, United Steelworkers of America. For twenty years, they obtained employment as trade show decorators through Local 17's hiring hall.

In 1994, Almquist saw union agents stuffing ballot boxes during an election for union president, Tommy Thomas. He reported the incident, and subsequently testified about election improprieties at a hearing before the National Labor Relations Board ("NLRB") in 1995. In 1996, he filed a charge with the NLRB complaining that job assignments were not being handed out fairly. These acts of insurgence purportedly angered Tommy Thomas and his steward, Tony Degrado, both of whom retaliated against Almquist by threatening him with loss of income, and finally by causing his employers to terminate him in September 1998. Surowiec too alleges that he opposed Tommy Thomas's reign as union president, and was fired because of it. Plaintiffs bring a two count Complaint alleging a violation of the duty of fair representation, and a violation of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a).

The Union denies the allegations and suggests that there is a perfectly legitimate reason why Almquist and Surowiec were fired: both failed to pay their dues. Defendant now moves for summary judgment on jurisdictional grounds and, alternatively, because there was no violation of either statute.

**I. NLRB Preemption**

As an initial matter, I find that I have jurisdiction over this dispute. The preemption provision of the National Labor Relations Act ("NLRA") does not apply here.

As a general rule, when a plaintiff challenges an action that is "arguably subject to § 7 or § 8 of the [NLRA], the challenge is within the primary jurisdiction of the NLRB." *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 44 (1998). Defendant observes (and rightly so) that this case is subject to 29 U.S.C. § 158(b), which forbids a union or its agents from causing or attempting to cause an employer to discriminate unlawfully against an employee.

A modified rule applies, however, when a plaintiff alleges a breach of the duty of fair representation in addition to a violation of the NLRA. *See Marquez*, 525 U.S. at 49. Federal district courts may resolve statutory issues under the NLRA to the extent that the resolution of these issues is necessary for a decision on plaintiffs' duty of fair representation claim. *See id.*

Almquist says that his dismissal was retaliation for his testimony regarding election improprieties. Surowiec maintains that he was discharged because he filed a charge with the NLRB challenging the way in which Thomas and his stewards assigned work to union members. If these allegations are true, then plaintiffs were dismissed in violation of the duty of fair representation. Since the actions alleged (constituting a violation of the NLRA) are inextricably linked to the duty of fair representation claim, I have jurisdiction over this dispute.

2

## II. Breach of Duty of Fair Representation

A union breaches its duty of fair representation when its conduct towards a member of the bargaining unit is arbitrary, discriminatory, or in bad faith. *See* 29 U.S.C. § 159(a); *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33 (1998). To survive a motion for summary judgment, plaintiffs must show that there is a material fact in dispute as to whether defendant's conduct fell into one of these three categories.

I find that there was no breach of the duty of fair representation because the Union had a lawful justification for terminating plaintiffs. According to the undisputed facts, defendant Union is party to a collective bargaining agreement with various employers in the trade and exhibitions industry. Each collective bargaining agreement contains an identical security provision.

Article VI, Section 4 of the collective bargaining agreement provides:

> "Upon written notification by the Union, the Employer will immediately discharge any Employee who [sic] not maintain membership in the Union to the extent of paying monthly Union dues, service fees, initiation fees, or other financial obligations uniformly imposed coming within the scope of the Labor Management Relations Act of 1947, and after such a discharge, the Union will not thereafter refer the discharged employee to the Employer pursuant to Article II."

Defendants assert that they discharged plaintiffs pursuant to this provision because plaintiffs were months in arrears on their union dues. Plaintiffs' Local Rule 56.1 Response acknowledges that they were in arrears and substantially corroborates defendant's account of when and by how much they became delinquent in their payments.

The last payment that Almquist recalled making to the Union was sometime in 1995. There is a letter from Almquist, dated August 1995, in which he promised that he would pay

3

$100 per week toward what he owed. No payments were forthcoming. On October 8, 1997, a union agent advised him in writing that failure to pay would result in his termination. Still, Almquist did not pay. Additional written warnings issued in December 1997 and July 1998 went unanswered. Almquist was discharged in September 1998.

Surowiec paid no dues from May 1997 until his termination in August 1998. In the intervening period, he received three written notices and one verbal warning that failure to pay dues would lead the Union to demand his discharge.[1]

Almquist gives several (not entirely consistent) explanations for why he did not pay. The first explanation is that he was unable to pay because "he was being cheated out of time and money." (Almquist Dep. at 141). The second explanation is that he refused to pay, as a sort of protest "because they [union agents] were continuously taking money out of my pocket and giving it to other members." (Almquist Dep. at 32-33, 98, 144). I have no idea from the record to what Almquist refers when he speaks of being "cheated out of time and money," or being treated unfairly as compared to other union members. Neither the Complaint nor plaintiffs' response brief contain any underlying facts to support these allegations.

Next, both plaintiffs suggest that their terminations were unjustified because the Union could have taken their dues directly out of their pay checks. Both Almquist and Surowiec had signed "check-off" documents to allow such deductions to be made automatically. The problem with this argument is that it has been squarely rejected by the Court of Appeals. See *Larkins v.*

---

[1] The fact that Almquist and Surowiec were over-assessed in their referral fees by approximately $1000 and $1,452.23 respectively does not figure into my analysis. Neither plaintiff discovered that he overpaid his referral fees until after he was discharged, and both were reimbursed. Almquist, at least, owed the Union money over and beyond what he overpaid them. Moreover, the obligation to pay union dues was independent of the obligation to pay referral fees.

4

*Nat'l Labor Relations Bd.*, 596 F.2d 240 (7th Cir. 1979)(holding that plaintiff cannot escape responsibility for paying his union dues on the theory that once he executed the check-off documents his obligations shifted to the union). As in *Larkins*, here plaintiffs could have determined from their pay checks that no deductions were made, but they did not do so.

A union seeking to enforce a security clause has a fiduciary duty to deal fairly with the employee and to inform him of the amount he owes and the deadline for payment before the union can ask the employer to terminate the employee. See *Production Workers Union of Chicago and Vicinity, Local v. Nat'l Labor Relations Bd.*, 161 F.3d 1047, 1052 (7th Cir. 1998). Here, there is no suggestion that the procedure by which the termination was accomplished was improper. On the contrary, both plaintiffs acknowledge that they received repeated warnings about the consequences of their failure to pay dues.

A union's actions are deemed arbitrary only if they are "so far outside a wide range of reasonableness as to be irrational." *Konen v. Int'l Brotherhood of Teamsters*, 255 F.3d 402, 407 (7th Cir. 2001). From an objective point of view, the terminations were a lawful exercise of defendant's power under the collective bargaining agreement.

Allegations of bad faith require me to consider the Union's subjective motivation. That Tommy Thomas threatened to fire plaintiffs for nonpayment of dues is hardly evidence of his bad faith. He had every right, and indeed, the responsibility, to inform plaintiffs of the consequences of their actions. The fact that defendant did not cause the discharge of other union members who were in arrears is also not evidence of bad faith (since there is no suggestion that other members were as chronically delinquent as plaintiffs). Finally, there is a causation problem. Plaintiffs insist that the bad faith decision to terminate in September 1998 stemmed from plaintiffs'

5

opposition of Thomas in an election that took place four years earlier. (Pl.'s Mem. in Opposition at 5). Almquist and Surowiec also claim that they were threatened with termination for filing charges with the NLRB in 1996 and 1997, respectively. The most recent of these incidents was eighteen months before plaintiffs were terminated. Had defendant wished to terminate plaintiffs with an improper motive, it could have done so in these intervening months. Instead, it gave plaintiffs numerous opportunities to pay up, and finally terminated them only after it had no response to its final warning letter.

I find that there was no breach of the duty of fair representation.

### III. Labor-Management Reporting and Disclosure Act, 29 U.S.C. 411(a)

Count II alleges a cause of action pursuant to Section 411(a)(2) of the Labor-Management Reporting and Disclosure Act which provides that:

> "Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings . . .."

The Act protects members from being expelled for "exercising any right to which [they] are entitled under the provisions of this chapter." 29 U.S.C. § 529. The enumerated disciplinary actions are permitted, however if they are imposed not as punishment for exercising free expression, but rather as a consequence of delinquency in dues. *See* 29 U.S.C. § 411(a)(5). The termination was justified under the terms of the collective bargaining agreement.

Plaintiffs make no effort to explain how defendant's "manipula[tion] of its job referral system" relates to a violation of their freedom of expression under the Act. And in any event, the LMRDA does not protect union members who merely allege that they were victims of the

personal vendetta of a union officer who refused to refer them to employment. See *Breininger v. Sheet Metal Workers Int'l Ass'n*, 493 U.S. 67, 90-94 (1989). This claim, too, fails.

The motion for summary judgment is granted, terminating the case.

ENTER:

James B. Zagel
United States District Judge

DATE: SEP 2 0 2001